```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
                                    :
CENTURY 21 REAL ESTATE, LLC
                                    :
     v.                             : Civil Action No. DKC 2006-1966
                                    :
ASSOCIATES & JOHNSON, LLC,
 et al.                             :
```

**MEMORANDUM OPINION**

Several motions remain for resolution in this dispute between Century 21 and a former affiliate: a portion of Plaintiff's motion for default judgment (paper 12), the motion to set aside default by Associates and Johnson, LLC and George H. Johnson (paper 18), and, finally, Plaintiff's Petition for Attorneys' Fees (paper 41).  With regard to those issues, no further hearing is deemed necessary.

Century 21 Real Estate, LLC, filed this suit against Associates and Johnson, LLC, George H. Johnson, Alan B. Johnson and Jon R. Johnson, for claims arising from a franchise agreement entered into among the parties in 2002.  In addition, the members of Associates and Johnson signed a Guaranty of Payment and Performance.  The verified complaint sought injunctive relief, damages, attorneys' fees, and an accounting.  After service of process, when none of the defendants had answered the complaint, the clerk entered their defaults.  (Paper 13).  Associates & Johnson, LLC and George H. Johnson then filed answers to the complaint along with a motion to set aside default.  Plaintiff and those two parties then embarked on proceedings to resolve the

request for injunctive relief and damages. A consent permanent injunction was entered and the parties have since stipulated to the amount of damages. Thus, the motion to vacate default will be granted. The other two Defendants, however, have never appeared in this action and it is appropriate to enter judgment against them for the amount of damages that arose from the franchise agreement and its termination. The amount of damages stipulated by the parties is less than the amount sought in the complaint and judgment will be entered against all defendants in that amount.

The Franchise Agreement contained a provision for attorneys' fees in ¶20:

> Should either party incur attorneys' fees in order to enforce the terms and conditions of this Agreement, including post-term covenants, whether or not a legal action is instituted, the party not in default shall be entitled to reimbursement of such attorneys' fees and costs, in addition to any other remedies either party may have at law or in equity. Should any legal action be instituted in connection with this Agreement, the prevailing party shall be entitled to recover all costs and expenses, including attorneys' fees.

Plaintiff seeks $55,206.37 in fees and costs and has submitted detailed records in support.[1] Defendants have responded, contending that the fees requested are not reasonable, that the results could have been obtained "with significantly fewer hours,"

---

[1] The motion seeks fees against "Defendants." Fees will only be awarded against Associates and Johnson, LLC and George H. Johnson because the other two defendants, having defaulted, were not responsible for causing the bulk of the fees to be incurred.

2

that certain information was redacted from Plaintiff's filings, and that they object to billing for conferences with other firm members and communications with the client.  Plaintiff filed a reply, further explaining its billing practices and including additional information.

To calculate an award of attorneys' fees, the court generally should determine "a 'lodestar' figure by multiplying the number of reasonable hours expended times a reasonable rate."  *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (quoting *Daly v. Hill*, 790 F.2d 1071, 1077 (4th Cir. 1986)).  The following factors usually guide the court in its calculation:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Brodziak*, 145 F.3d at 196 (internal quotations omitted); *see also Dennis v. Columbia Colleton Med. Ctr. Inc.*, 290 F.3d 639, 652 (4th Cir. 2002).

Defendants assert that Plaintiff's attorneys billed an excessive number of hours.  They argue that fewer hours were necessary, as Defendants consented to the entry of temporary and permanent injunctions, the hearings in the case were relatively brief, and there was no formal discovery.  (Paper 51 ¶ 4). However, Defendants' arguments fail to account for the expenses accumulated as a result of their failure to cooperate with Plaintiff.  Plaintiff's bills reflect efforts to communicate with Defendants and reasonable preparations for hearings, much of which was necessary because of Defendants' failure to comply with the permanent injunction.  Accordingly, the court does not find that Plaintiff's hours are excessive.

Defendants object to Plaintiff's bills for time spent conferencing with other firm members.  Plaintiff denies that it billed for conferences (paper 53, at 6), and the auditor did in fact reduce Plaintiff's bill by $455.00 to account for instances in which two attorneys billed for the same conference or discussion. (*See* Paper 53, Ex. B, Inv. No. 2002241).  However, Plaintiff billed for two other duplicative conferences the auditor did not discount. The court will reduce the fees by the amount of the less experienced attorney's fees for each conference.  Accordingly, Invoice 2001958 will be reduced for the August 4, 2006 conference (deduct $75 (.3 hour at $250)) and Invoice 2002103 will be reduced

4

for the September 21, 2006 conference (deduct $105 (.2 hour at $70)).[2]

To determine the reasonableness of the attorneys' billing rates, the court relies on the "prevailing market rates in the relevant community." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Further,

> The market rate should be determined by evidence of "what attorneys earn from paying clients for similar services in similar circumstances," which, of course, may include evidence of what the plaintiff's attorney actually charged his client. *See Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir.1994).

*Depaoli v. Vacation Sales Associates, L.L.C.*, 489 F.3d 615, 622 (4th Cir. 2007). "Evidence of the prevailing market rate usually takes the form of affidavits from other counsel attesting to their rates or the prevailing market rates." *CoStar Group, Inc. v. LoopNet, Inc.*, 106 F.Supp.2d 780, 788 (D.Md. 2000). In the absence of such evidence, however, "the court may rely on its own knowledge of the market." *Id.*

Plaintiff submitted information that five attorneys worked on this matter at the following rates:

---

[2] Defendants also object to attorneys' fees charged for communications with the client. (Paper 51 ¶ 7). Plaintiff lists only two charges for client communications, both of which are reasonable. (Paper 41, Ex. C, Inv. 2001958, at 1 ($75) and Inv. 2002899, at 3 ($105)). Defendants do not present any legal or factual arguments to justify reducing these fees.

| | |
|---|---|
| William Savarino | $325; $350; $395 |
| Russell J. Gaspar | $350; $375 |
| Elizabeth M. Fischer | $260; $275 |
| Rowena Laxa | $250 |
| Brian Bunting | $230 |

Plaintiff's attorneys' rates appear to have increased in July 2007. (*Compare* Paper 41, Ex. D *with* Paper 53, Ex. C).[3] The attorneys did not provide an explanation for this increase, so out of an abundance of caution, the court will recalculate the amounts charged in July to reflect the rates attested to in the attorneys' affidavits:

| | Hours | July 2007 Rates | Previous Rates |
|---|---|---|---|
| William Savarino | 11.4 | $4503 | $3990 |
| Russell Gaspar | 0.3 | $112.50 | $105 |
| Elizabeth Fischer | 6.8 | $1870 | $1768 |
| Total Deduction | | | $622.50 |

Plaintiff did not submit evidence of prevailing market rates aside from its attorneys' affidavits regarding the reasonableness of their fees. While this court's guidelines in the local rules were written originally for civil rights disputes, they provide a useful analogy by which to measure the reasonableness of legal rates in the community. *See Corridor Marketplace, LLC v. Men's*

---

[3] Mr. Savarino's rate increased from $350 to $395; Mr. Gaspar's rate increased from $350 to $375; Ms. Fischer's rate increased from $260 to $275.

*Wearhouse, Inc.*, 2005 WL 2293570, at *1 (D.Md. Sept. 9, 2005) (citing the Local Rules' Guidelines for Attorney's Fees in a lease termination case). *See* Local Rules of the United States District Court for the District of Maryland, App. B., at 81.

Mr. Savarino is a partner at Cohen Mohr and has been a member of the bar for 24 years. (*See* Paper 41, Ex. D "Savarino Decl." ¶ 2). He has practiced civil litigation for many years. (*Id.*). Mr. Gaspar, another Cohen Mohr partner, has been practicing for 32 years. (Paper 41, Ex. D "Gaspar Decl." ¶2). He specializes in business litigation. (*Id.*). Even though Messrs. Savarino and Gaspar's rates are higher than the highest rate suggested by the Local Rules, their rates are reasonable in light of their decades of experience. *See* D.Md. Local Rules, App. B(3)(c) (suggesting $200-275 for attorneys with more than eight years of experience).

Ms. Fischer is an associate at Cohen Mohr and has been a member of the bar for 10 years. (Paper 41, Ex. D "Fischer Decl." ¶ 2). She practices civil litigation. (*Id.*). Ms. Fischer's $260 rate is reasonable for an attorney with ten years of experience. *See* D.Md. Local Rules, App. B(3)(c).

Neither Ms. Laxa nor Mr. Bunting submitted affidavits regarding their legal experience. (*See* Paper 41, Savarino Decl. ¶¶ 5-8 (listing Ms. Laxa and Mr. Bunting's hourly rates and total billable hours on the matter)). Plaintiff has established that

Cohen Mohr's rates are generally reasonable, however, so the court will not reduce Ms. Laxa or Mr. Bunting's rates.

As noted above, the court will make deductions for duplicative billing for attorney conferences (-$145) and the July rate increases (-$622.50), adjusting the Invoice Total to $57,403.93. Applying the Plaintiff's Adjustment to Fees (deduct $1,417.50) and the 2% discount (deduct $1,119.73), the total attorneys' fees owed by Defendants is $54,866.70.[4]

Accordingly, Plaintiff's request for fees will be granted in the amount of $54,866.70.

A separate order will be entered.

>       /s/
> DEBORAH K. CHASANOW
> United States District Judge

---

[4] Plaintiff asserts that it applies a 2% discount to all invoices, (paper 53, at 3), yet it appears as though the discount was not applied to all invoices listed on Exhibit B of Plaintiff's Response. (Paper 53, Ex. B). Plaintiff has not explained its irregular application of the discount, so the court will apply the 2% reduction to the Invoice Total less Adjustments without regard to Plaintiff's inconsistent application.